IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IP CO., LLC, d/b/a Intus IQ | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 6:11cv439 |
| | ) | |
| | ) | |
| SCHNEIDER ELECTRIC BUILDINGS | ) | |
| AMERICAS, INC.; SCHNEIDER | ) | |
| ELECTRIC USA, INC.; and | ) | |
| SCHNEIDER ELECTRIC BUILDINGS, | ) | **JURY TRIAL DEMANDED** |
| LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF IP CO., LLC'S OPENING *MARKMAN* BRIEF IN SUPPORT OF ITS
PROPOSED CLAIM CONSTRUCTIONS**

## I.      Introduction

Plaintiff IP CO., LLC d/b/a Intus IQ ("IPCO" or "Plaintiff") hereby submits this brief in

support of its proposed constructions of the disputed claim terms of U.S. Patent Nos. 6,044,062

(the "'062 Patent") (Exhibit A) and 6,249,516 (the "'516 Patent") (Exhibit B).  Plaintiff sued

Defendants Schneider Electric Buildings Americas, Inc.; Schneider Electric USA, Inc.; and

Schneider Electric Buildings, LLC (collectively "Schneider") and others for infringement of the

'062 Patent and the '516 Patent.  Each of the disputed claim terms are analyzed below. Attached

hereto as Exhibit C is a table identifying each of the Parties' proposed constructions for the

disputed claim terms.

## II.      The Technology at Issue

Dr. Edwin Brownrigg, the lead inventor of the Patents-in-Suit, is widely-recognized as a

leader in the wireless networking field, specifically networks that enable wireless devices to form

efficient, self-healing networks.  Dr. Brownrigg has over thirty years experience with wireless

data communication, including academic, research, and government-related positions.  Notably,

since 1994 Dr. Brownrigg has engineered and perfected software for "mesh" networking.  Dr.

Brownrigg is the inventor of several pending patent applications and three issued patents which

have been licensed to nearly forty different companies.

The Patents-in-Suit are generally directed towards communications within a wireless

network, and are more fully detailed in IPCO's Technology Tutorial, which was submitted to the

Court on December 18, 2012.[1]  Notably, the Patents-in-Suit both recently emerged from

reexamination.  The claims of the '516 Patent emerged virtually unscathed (with only minor

amendments to correct typographical errors); and the '062 Patent emerged with twelve of sixteen

---

[1]      The '516 Patent is a divisional of the application that led to the '062 Patent.  Thus, the
two Patents-in-Suit share virtually the same specification.

claims confirmed as patentable.  A copy of the reexamination certificates for the '062 and '516 Patents are attached hereto as Exhibits D and E, respectively.

## III.    Legal Standards Governing Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted).  In construing a patent's claims, there is always a "heavy presumption" that claim terms take on their full ordinary and customary meaning.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted).  Claim construction "is not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  "[C]ourts are not (and should not be) required to construe **every** limitation present in a patent's asserted claims."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis in original); *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed Cir. 2001) (holding that claims did "not require elaborate interpretation").

In construing claim terms, courts look first to the intrinsic evidence, which begins with an examination of the context in which the term is used in the asserted claim.  *See Biagro W. Sales, Inc. v. Grow More, Inc*., 423 F.3d 1296, 1302 (Fed. Cir. 2005) ("It is elementary that claim construction begins with, and remains focused on, the language of the claims.").  Courts then look to the patent's specification, which "is always highly relevant to the claim construction analysis," and the "single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315 (citation omitted).  Courts also consider the patent's prosecution history, which can demonstrate how the USPTO and inventor understood the patent.  *Id.* at 1317.

With regard to means-plus-function ("MPF") claims, the first step in analyzing those

terms is determining whether 35 U.S.C. § 112, ¶ 6, applies.  While the use of the word "means"

triggers a presumption that the 35 U.S.C. § 112, ¶ 6 applies, that presumption may be rebutted if

the claim recites sufficient structure for performing the function.  *See Cole v. Kimberly–Clark*

*Corp.,* 102 F.3d 524, 531 (Fed. Cir. 1996) (finding "perforation means…" did not invoke means-

plus-function claiming because the claim described sufficient detail regarding the structure).

When a term is deemed governed by 35 U.S.C. § 112, ¶ 6, claim construction involves

two steps: (1) determining the function of the recited claim; and (2) identifying the

corresponding structure disclosed in the written description, and equivalents thereof.  *See*

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006).  A

structure is "corresponding" if it is clearly linked or associated with performing the recited

function, as perceived by one of ordinary skill in the art.  *Medtronic, Inc. v. Advanced*

*Cardiovascular Sys.*, 248 F.3d 1303, 1311, 1313 (Fed. Cir. 2001); *see also Micro Chem., Inc. v.*

*Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (the corresponding structure

is only that which is necessary to perform the claimed function).

## IV.    The Parties' Differing Approaches to Claim Construction

The claim terms at issue are either self-defining in the claims themselves or use words

with well-known meanings to those of ordinary skill in the art.  Accordingly, the plain and

ordinary meaning of the disputed claim terms of the '516 and '062 Patents should control, with

no further construction required.

Schneider's proposed constructions re-write otherwise clear claim language and attempt

to import limitations from the specification in direct violation of Federal Circuit precedent.

*Phillips*, 415 F.3d at 1323.  For example, Schneider insists that the "client link tree..." include

only the "most recent" transmission paths – a limitation that is not to be found anywhere in the

claims. Other times, Schneider proposes a construction that even conflicts with the specification. *See Merck & Co. v. Teva Pharm. USA, Inc*., 395 F.3d 1364, 1372 (Fed. Cir. 2005) (reversing claim construction that was inconsistent with the specification).  For example, Schneider insists that the "server controller" is a single device, even though the specification contemplates that server processes can take place across multiple processors.

In other instances, Schneider attempts to replace claim language with confusing or redundant language. *See Motorola, Inc. v. VTech Commc'ns, Inc*., No. 5:07-CV-171, 2009 WL 2026317, at *8 (E.D. Tex. July 6, 2009) ("where additional language may be unduly limiting, confusing, or redundant, it is in a court's power to determine that **no construction is necessary**") (emphasis added).  For example, Schneider insists that the Court replace the common term "data packet" with a verbose phrase that could only lead to jury confusion.  Schneider's proposals fall far short of overcoming the heavy presumption in favor of the ordinary meaning, and should be rejected.  *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *see also Aloft Media, LLC v. Microsoft Corp.*, No. 6:08-CV-50, 2009 WL 803133, at *5 n.2 (E.D. Tex. Mar. 24, 2009) ("This Court has routinely rejected [the] argument [that the Court must construe a term when the parties dispute the scope and meaning of claim language].").

Finally, with respect to certain alleged MPF terms, Schneider: (1) improperly alleges those terms to be governed by 35 U.S.C. 112, ¶ 6, despite their clear recitation of structure; (2) fails to identify any structure with any meaningful particularity, instead simply citing to several **columns** of text from the patents; and (3) fails to recite equivalents.  As shown below, these proposals represent an improper attempt by Schneider to escape infringement through the claim construction process, and should be rejected.

V.      **The Claim Terms in Dispute**

A.  ***"server controller"*** (**'062 Patent Claim 2**)

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning.<br>Alternatively, "one or more processors, such as microprocessors, used by a server" | A processor of the server that is separate from the CPU of the server and that executes a server process. |

The term "server controller" is used consistently with its plain and ordinary meaning, and need not be further construed.  The "server controller" is simply a processor(s) used to control the server: "at least one server having a server controller … [which] implements a server process that includes controlling the server radio modem…." '062 Patent, Col. 5, ll. 9-13.  The parties appear to agree that a "controller" is a processor(s), such as a microprocessor, as illustrated for example in Figure 3, which illustrates an exemplary server:



Fig. 3

As shown above, the server 16 includes a computer system 38, which can include a microprocessor.  '062 Patent, Col. 12, l. 43 – Col. 13, l. 8.  Thus, to the extent the Court deems

construction necessary, it should construe this term to mean: "one or more processors, such as microprocessors, used by a server."

Schneider's construction improperly imports two limitations into this claim.  First, Schneider's construction imports the limitation that the processor **must** "execute[] a server process."  But the surrounding claim language sufficiently describes execution of a "server process," and including that limitation in this construction would simply be redundant. '062 Patent at Claim 2 ("said server controller implementing a server process…"); *See Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07-CV-171, 2009 WL 2026317, at *8 (E.D. Tex. July 6, 2009) (no construction may be necessary "where additional language may be unduly limiting, confusing, or redundant").

Next, Schneider requires that the processor be "separate from the CPU of the server." But nothing in the claims nor specification **requires** a separation of the "server controller" from any other processor.  In fact, the specification even contemplates that control of the server is achieved through the use of multiple processors.  As described in detail below, the "server process" can be executed in more than one place, for example, on "computer system 38" and/or "within the control section of the radio modem 62":

> the server process 70 can be implemented on computer system 38, within the control section of the radio modem 62, or partially in both of those places.  In the present preferred embodiment, the majority of the server process 70 is implemented on the computer system 38.  However, it should be noted that the control section C of the radio modem 62 includes a microprocessor and memory and, with proper program instructions, can be made to implement the process 70 of Fig. 4, freeing the personal computer 38 for other tasks.

'062 Patent, Col. 13, ll. 10-18.  Thus, there is no basis for requiring that the server controller be a single processor, or that it be separate from any other processor.  *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a construction that "excludes a

preferred embodiment … is rarely, if ever, correct.").  To add even further confusion to

Schneider's proposal, the phrase "CPU of the server" in Schneider's proposal is nowhere to be

found in the '062 Patent.  In sum, Schneider's proposal conflicts with the specification in

violation of well-settled claim construction principles, and should be rejected.

**B.  *"client controller"* ('062 Patent Claim 2)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning.<br>Alternatively, "one or more processors, such as microprocessors, used by a client" | A processor of a client that is separate from the CPU of the client and that executes a client process. |

As with "server controller," the "client controller" is similarly self-defining and requires

no further construction.  Here, the "client controller" is simply the processor(s) used to control

the client: "client controller implements a client process including the transmission and receipt of

data packets…" '062 Patent, Col. 5, ll. 14-16.  The claims themselves provide further context to

provide meaning to this term.  *See, e.g,* '062 Patent at Claim 2 ("a plurality of clients each

including a client controller … said client controller implementing a client process …").

As with "server controller," Schneider attempts to import the limitation that the "client

controller" must be "separate from" the CPU of the client, and that the "client controller" must

execute a client process.  For the same reasons set forth above in Part V.A, with respect to

"server controller," this construction should also be rejected.  By way of example only, the

specification plainly contemplates the "client process" being executed by more than one device:

> a client process … operates on each of the clients 18.  In the present invention, the
> client process operates, at least in part, on the client machine 20.  However, in
> alternative embodiment of the present invention, the client process can operate on
> the controller of the radio modem 22 of the client 18.

'062 Patent, Col. 8, ll. 36-42; *see also* Col. 19, ll. 35-38 ("Again, this [client] process can run on

the microprocessor 282, or it can be partially or wholly run on the microprocessor of the

controller C of the radio modem 22….."); Fig. 13. Thus, there is no basis for requiring that the client controller be a single processor, or that it be separate from any other processor. *Vitronics,* 90 F.3d at 1583.  Schneider's proposal should be rejected for failing to follow Federal Circuit precedent.

**C.** ***"said client process of each of said clients initiates and selects a radio transmission path to said server"* ('062 Patent Claim 2)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning. Alternatively, "said client process of each of said clients identifies and selects a radio transmission path to said server" | The client process of each client determines all possible radio transmission paths from that client to the server and controls the decision of which radio transmission path to the server that client will use. |

There is no need to further construe this self-defining phrase.  Put simply, this phrase describes the "client process" as including a determination of which path to use when sending a transmission to the server.  *See, e.g.,* '062 Patent, Col. 5, ll. 16-19; Figs. 14, 20 (illustrating an initialization routine that connects a client to a server).  There is nothing confusing about this phrase that would require further construction.  *See Motorola*, 2009 WL 2026317, at *8.

Schneider's construction imports the unnecessary limitation that the client process must first include a determination of "all **possible** radio transmission paths."  As an initial matter, the concept of "all possible" paths is vague and ambiguous and is not a phrase even found in the '062 Patent.  But even more importantly, this construction – which rewrites otherwise clear claim language – defies the cardinal rule of claim construction forbidding examples from the specification from being imported into the claims.  *See, e.g.,  CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225,1231 (Fed. Cir. 2005) ("this court will not at any time import limitations from the specification into the claims").  Here, the specification contemplates the client "preferably" choosing the "best" path to the server.  '062 Patent, Col. 5, ll. 36-38.  But in the

example given, the path chosen is the path with the least number of "hops" to the server.  '062 Patent, Col. 8, l. 65 – Col. 9, l. 17.  But if the client is already in direct communication with the server, it need not determine other possible paths to the server.  *See, e.g.,* '062 Patent, Col. 8, ll. 43-58.  Thus, when the client "initiates and selects a path," there is no need to first "determine all possible paths" as Schneider claims.  This limitation is plainly an attempt by Schneider to import limitations into the claims where none properly exist in an effort to manufacture a non-infringement position.  In the end, the claim language is clear, and there is no need to further construe this term.  *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (where claim language is clear on its face "then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified").

**D.  *"client link tree [having client link entries]"* ('062 Patent Claims 2, 3, 4, 6, 7, 8, 10, 11, 12, 14, 15, and 16)**

| Plaintiff's Position | Schneider's Position |
| --- | --- |
| Does not require construction – entitled to plain & ordinary meaning. Alternatively, "data structure relating to links among or between clients and/or one or more servers" | A data structure that stores, for each client, only the most recent transmission path to the server selected by that client. |

This language is clear on its face and requires no further construction. The "client link tree…" simply refers to data regarding links contained in a tree, which include links among or between clients and/or one or more servers.  This description is plainly supported by the specification.  *See, e.g.,* '062 Patent at Figs. 2*a* – 2*o*; Col. 10, l. 8 – Col. 12, l. 43.

Schneider's proposed construction highlights its distortion of well-settled claim construction principles.  First, Schneider's proposal imports the limitation that the link tree include "only the most recent transmission path" selected by the client.  While the specification

contemplates "updating" the client link tree, **nothing** in the claims places any limitation on the "recentness" of the transmission path.  Moreover, certain dependent claims add additional limitations to the "client link tree" – highlighting the fact that Schneider's proposal is improperly narrow.  *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010) ("'presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim'") (citations omitted); *see also Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) (concluding that an independent claim should be given broader scope than a dependent claim to avoid rendering the dependent claim redundant).  For example, Claim 3 expresses the concept of updating the link tree when, for example, certain "predetermined conditions" are met.  '062 Patent at Claim 3 ("logic that compares a selected link … to a current client link entry … and logic that updates said client link tree when said comparison meets predetermined conditions").  While predetermined conditions **may** include updating the client link tree to include a more "recent" path selected by the client, there is **nothing** in the claims themselves requiring this to always be the case.   This is yet another example of Schneider taking an otherwise easily-understood phrase and rewriting it to include concepts not expressed by the claim itself.

Second, Schneider's proposal requires that the link tree stores a path "**to** the server" "for **each** client," thus implying that all client paths must be included in the link tree, and each such path must be complete.  Yet nothing in the claims, specification, or file history require this to be the case.  Due to the dynamic nature of the system, clients continuously enter and leave the system, thus rendering the set of "all clients" undefined.  *See* '062 Patent, Col. 11, ll. 37-55 (describing process of adding a new client to a server).  Further, the specification describes the process of a client informing the server of its new link, which need not include information for

**all** clients.  '062 Patent, Col. 11, l. 63 – Col. 12, l. 7; Figures 2*a* – 2*o*.  Schneider also imports

examples into the claims by requiring that the transmission path must always be **to** the server

from the client (rather than vice versa).  Even if the specification discloses transmission paths

"from a client to a server," the Federal Circuit has cautioned against confining the claims to that

embodiment.  *Phillips*, 415 F.3d at 1323.

Finally, Schneider's proposal requires that the data structure "store" each transmission

path.  Here again, Schneider imports an improper narrowing limitation into this phrase.  The

"client link tree" is simply a "data structure" that can be maintained by, for example, a server.

'062 Patent, Col. 9, ll. 47-48.  It does not itself perform an active "storing" function, as

Schneider suggests.  In fact, the specification allows for an alternative, less optimal route to be

cached in case the client's current link becomes inoperative.  *Id.* at Fig. 18; Col. 21, ll. 23-26.

### E.  *"housekeeping [functions/step]"* ('062 Patent Claims 6, 10, and 14)

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning. Alternatively, "functions/steps designed to keep the network in good working order" | Deleting clients from the client link tree that have not communicated with the server for a predetermined time period. |

In the field of the Patents-in-Suit, "housekeeping" has a meaning readily understood to

those of ordinary skill in the art.  Housekeeping simply refers to the functions and routines used

to keep the system in good working order.  *See* MICROSOFT COMPUTER DICTIONARY 258 (5th ed.

2002) (defining "housekeeping" as "any of various routines, such as updating the clock or

performing garbage collection, designed to keep the system … in good working order) (attached

hereto in Exhibit F).

Schneider commits error by proposing a construction that confines this term to a single

embodiment described in the specification.  "Deleting" clients when they have not

communicated with the server within a certain time period – as Schneider proposes – is but one of various possible housekeeping function.  There is no reason to limit "housekeeping [functions/step]" to this single function described in the specification.  *See Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").  Notably, the specification often refers generally to "housekeeping functions" in the plural, indicating various potential routines that could be used to maintain the network in good working order.  *See, e.g.,* '062 Patent, Col. 5, ll. 29-32 ("server process includes … performing housekeeping functions"); Col. 16, ll. 61-62 ("the table of Fig. 9c is created to implement fast searching and other housekeeping functions").  Thus, should the Court deem construction of this term necessary, it should construe this term to mean "functions/steps designed to keep the network in good working order," which is consistent with the term's plain and ordinary meaning.

### F.  *"digital controller"* ('516 Patent Claims 1, 4, 5, and 15)

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning. Alternatively, "an equipment, program, and/or device that facilitates transmission of digital data." | A processor of the server/gateway that is separate from the CPU of the server/gateway. |

The functions of the "digital controller" are defined by the claims themselves.  *See e.g.,* '516 Patent at Claim 1 (stating in part "said digital controller **communicating with said first network** via said radio modem and **communicating with said second network** via said network interface") (emphasis added).  There is no need for the Court to construe this term.  *See Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001) (where claim language is clear on its face "then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified").

Schneider's proposed construction impermissibly limits the claim by requiring that the "digital controller" be separate from the CPU of the server/gateway, when no such requirement exists in the claims or the specification.  In fact, this construction may cause jury confusion by introducing the concept of a second controller – the "CPU of the server/gateway" – that is not even recited in the claims or specification.  Even if such a CPU were included in the claims, there is no basis for importing the limitation that the "digital controller" must be "separate from" that CPU.  Again, this construction appears to be another attempt by Schneider to manufacture limitations to escape infringement.  This is improper.  *Phillips*, 415 F.3d at 1323.  Should the Court deem construction necessary, the Court should construe this term to mean "an equipment, program, and/or device that facilitates transmission of digital data."

**G.  *"data packet"* ('516 Patent Claims 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 18)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning. | An associated string of digital information that is transferred and processed as a unit. |

"Data packet" has a commonly-used term that requires no further construction.  To adopt Schneider's proposal would lead to unnecessary jury confusion by replacing this common term with a verbose and esoteric phrase.  Thus, IPCO respectfully requests that the Court decline to construe this term.

**H.  *"map of [data packet] transmission paths [of a plurality of clients of said first network/of the wireless network/of the first network]"* ('516 Patent Claims 1, 13, 14, 15, and 19)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning.<br>Alternatively, "map of data packet transmission paths" should be construed to mean: "data structure containing a representation of one or more transmission paths" | A data structure that stores, for each client, only the most recent transmission path to the server/gateway selected by that client. |

The "map of data packet transmission paths" is simply a representation of one or more transmission paths.[2]  *See, e.g.,* '516 Patent at Figs. 9a, 9b.  Schneider proposes virtually the same improper construction for this term as it did for the term "client link tree [having client link entries]," which is discussed in detail in Part V.D, and is incorporated herein by reference.  As discussed above, Schneider's construction violates Federal Circuit precedent by importing improper limitations into this claim term.  Should the Court deem construction necessary, the Court should construe this term to mean "data structure containing a representation of one or more transmission paths."  This construction is consistent with the specification and how a person of ordinary skill in the art would interpret this term.

## I.   *"a header"* ('516 Patent Claims 5, 6, 8, 9, 10, 12, and 17)

| Plaintiff's Position | Schneider's Position |
|---|---|
| Does not require construction – entitled to plain & ordinary meaning.<br>Alternatively, "a portion of a packet containing information that may include routing information" | A data field at the start of a data packet that contains the source address, the address of all hops along the way (*i.e.*, the "link" of the data packet), and the destination address. |

"Header" is a commonly understood term that need not be construed. A header is simply a portion of a packet, typically at the beginning of the packet, which may include routing information.  *See, e.g.,* '516 Patent at Fig. 5A.

Schneider's proposed construction imports limitations that appear in a single embodiment disclosed in the specification, thus improperly **requiring** the header to include "the source address, the address of all hops along the way [], and the destination address."  '516 Patent, Col. 14, ll. 19-21.  Moreover, it is clear from the surrounding claims that the patentee did not deem

---

[2]      This interpretation is further supported by the dictionary definition of the term  "map." *See* Merriam-webster.com, defining "map" as "1(a): a representation usually on a flat surface of the whole or a part of an area; 1(b): a representation of the celestial sphere or a part of it; 2: something that represents with a clarity suggestive of a map." (attached hereto in Exhibit F).

those limitations necessary elements for the header as it is used in **all** claims.  *Phillips*, 415 F.3d at 1314 ("the usage of a term in one claim can often illuminate the meaning of the same term in other claims").  For example, Claim 5 recites that the "header" includes "an address of the client of the first network and a data transmission path to the client of the first network," while Claim 8 states that the "header" includes a "reverse link and a data type."  Because such limitations are set forth in dependent Claims 5 and 8, there is a presumption that those limitations are not present in the "header" of the independent Claims.  *Phillips*, 415 F.3d at 1314-15.  Thus, should the Court deem construction necessary, the Court should construe this term to mean "a portion of a packet containing information that may include routing information."

## VI.   The Alleged Means-Plus-Function Limitations in Dispute[3]

### A.  *"[a wireless network system comprising] server means providing a server process including receiving data packets via a server wireless communication means, sending data packets via said wireless communication means, communicating with a network, and performing housekeeping functions"* (**'062 Patent Claim 6**)

| Plaintiff's Position | Schneider's Position |
|---|---|
| "server means…" not a means plus function limitation; sufficient structure disclosed in claim.<br><br>Alternatively, if the Court deems this a means-plus-function limitation: | Function: providing a server process including receiving data packets via a server wireless communication means, sending data packets via said wireless communication means, communicating with a network, and performing housekeeping functions. |

---

[3]     In the parties' Joint Statement, Schneider appeared to allege that a number of MPF terms were indefinite.  Dkt. No. 107.  However, Schneider never complied with the letter brief requirement prescribed by the Court's standing orders and the Docket Control Order regarding briefing of any indefiniteness issues.  Accordingly, Schneider is now precluded from raising those arguments in connection with *Markman* briefing.  To the extent the Court deems it necessary to construe those terms, IPCO respectfully requests that the Court adopt the constructions set forth by IPCO in the parties' Joint Statement, which can be found at Dkt. No. 107.  In the event Schneider is later granted permission to file indefiniteness briefing on those terms (or any other terms), IPCO expressly reserves the right to rebut those arguments, including submitting expert rebuttal testimony.

| Function: receiving data packets via a server wireless communication means, sending data packets via said wireless communication means, communicating with a network, and performing housekeeping functions<br><br>Structure: a radio modem, a router or bridge, and one or more processors, such as a microprocessor. | Structure: The hardware and software described in FIGS. 3-11 and col. 12, l. 43 to col. 18, l. 5 of the specification. |
|---|---|

The "server means…" of Claim 6 is not a means-plus-function limitation because sufficient structure is disclosed in the claim itself.  As discussed above, the presumption that the use of the word "means" indicates a means-plus-function claim can be overcome when the claim recites sufficiently defined structure.  *Cole,* 102 F.3d at 531.  As the Federal Circuit has found, "sufficient structure may be disclosed when a 'term, as the name for structure, **has a reasonably well understood meaning in the art**'"  *Watts v. XL Sys., Inc.,* 232 F.3d 877, 880-81 (Fed. Cir. 2000) (emphasis added); *see also Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (need not identify a "single well-defined structure" to avoid 112(6), only important that "the name for the structure has a reasonably well understood meaning in the art").  Here, the term at issue, "server means…," sufficiently names the structure, and that structure (the server) has a well-understood meaning in the art.  Indeed, the "server means…" is used consistently with how the term "server" is used throughout the patent, as well as the dictionary definition of the term "server," and thus connotes sufficient structure to rebut the presumption that 35 U.S.C. 112, ¶ 6 applies here.  *See, e.g.,* '062 Patent, Abstract; *see also* Microsoft Computer Dictionary 474 (5th ed. 2002) (defining "server" in part as "a computer running administrative software that controls access to the network and its resources…. [Or] responds to commands from a client") (attached hereto in Exhibit F).  One of ordinary skill in the art would thus clearly understand the meaning of the commonly-used term "server."  *See Keithley v. The*

*Homestore.com, Inc.*, *et al.*, No. C03-04447 MJJ, 207 WL 2107337, at *20 (N.D. Cal. Sept. 12, 2007) (concluding that "server means" was not a means-plus-function term because each of the recited functions have a corresponding structure that is evident from the claim language).  The remainder of this phrase provides even additional structure, such as a "**wireless** communication means..."  Accordingly, IPCO respectfully requests that the Court decline to construe this term under 35 U.S.C. 112, ¶ 6; and, accordingly, not limit the structure to that defined in the specification and equivalents thereof.  Further, as a non-means-plus-function limitation, IPCO respectfully submits that this term is self-defining, and requires no further construction.

Schneider's proposal is improper.  First, Schneider baselessly insists that this limitation must be construed pursuant to 35 U.S.C. 112, ¶ 6.  Second, even if this limitation were deemed an MPF limitation, Schneider does not even adequately identify the structure necessary to perform the recited function.  Instead, Schneider cites to **nine** figures and **six** columns of text that purportedly describe the required hardware and software necessary to perform the recited function.  This overbroad citation to the specification can hardly lend any meaningful clarity to a jury.  Furthermore, the figures and text cited by Schneider surely identify certain structures or features that are not necessary to perform the claimed function.  *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1334-35 (Fed. Cir. 2004) (structures "not required for performing the claimed function" are "superfluous" to claim construction analysis and do not serve as claim limitations).  Nonetheless, if the Court deems this limitation to be governed by 35 U.S.C. 112, ¶ 6, the Court should adopt IPCO's proposed construction, which provides definitive structure that is consistent with the claims and specification.

**B.** *"[a wireless network system comprising] client means providing a client process including sending and receiving data packet via a client wireless communication means, maintaining a send/receive data buffer in digital memory, and selecting a link to said server means that is one of a direct link to said server and an indirect link to said server through at least one of the remainder of said plurality of client means"* **('062 Patent Claim 6)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| "client means…" not a means plus function limitation; sufficient structure disclosed in claim<br><br>Alternatively, if the Court deems this a means-plus-function limitation:<br><br>Function: sending and receiving data packet via a client wireless communication means, maintaining a send/receive data buffer in digital memory, and selecting a link to said server means that is one of a direct link to said server and an indirect link to said server through at least one of the remainder of said plurality of client means<br><br>Structure: a radio modem, digital memory, and one or more processors, such as a microprocessor. | Function: providing a client process including sending and receiving data packet via a client wireless communication means, maintaining a send/receive data buffer in digital memory, and selecting a link to said server means that is one of a direct link to said server and an indirect link to said server through at least one of the remainder of said plurality of client means<br><br>Structure: The hardware and software described in FIGS. 13-19 and col. 18, l. 66 to col. 22, l. 27 of the specification. |

As with "server means…," the "client means…" should similarly be deemed a non-means-plus-function limitation.  "Client" is a readily understood term in the art and connotes sufficient structure to rebut the presumption that 35 U.S.C. 112, ¶ 6 applies here.  MICROSOFT COMPUTER DICTIONARY 102 (5th ed. 2002) (defining "client" in part as "a computer that accesses shared network resources provided by another computer (called a *server*)") (attached hereto in Exhibit F).  "Client" is also used consistently throughout the claims and the specification.  *See, e.g.,* '062 Patent, Abstract (the clients process "initiates, selects, and maintains a radio transmission path to the server that is either a direct path to the server, or is an indirect path or 'link' to the server through at least one of the remainder of the clients").  Further,

the remainder of this limitation identifies additional structure, such as "digital memory."

Schneider once again attempts to adopt an unwieldy structure for the "client means…" by identifying six figures and almost five columns of text.  This confusing, nonspecific identification of "structure" hardly satisfies the intent of 35 U.S.C. 112, ¶ 6, and should be rejected.  Should the Court nonetheless deem this term to be a means-plus-function limitation, it should adopt the appropriately-defined structure set forth by IPCO above.

**C.  *"[a server comprising] means for receiving a data packet from a client of said wireless network"* ('516 Patent Claim 6)**

| Plaintiff's Position | Schneider's Position |
|---|---|
| Function: receiving a data packet from a client of said wireless network | Function: receiving a data packet from a client of said wireless network |
| Structure: a radio modem and its equivalents | Structure: The radio modem 62 described in FIGS. 3 and 12, col. 13, ll. 10-17, and col. 18, l. 14 to col. 19, l. 7 of the specification. |

It is well known that the only structure necessary for sending or receiving a data packet to or from the wireless network is a simple radio modem, as described throughout the '516 Patent. '516 Patent, Col. 2; Col. 4, ll. 51-65; Col. 6, ll. 8-17.  Schneider's proposed construction improperly limits the "radio modem" to that described at certain paragraphs in the specification, and further fails to identify "equivalents." 35 U.S.C. § 112 (2008) ("such claim shall be construed to cover the corresponding structure, material, or acts described in the specification **and equivalents thereof**") (emphasis added).  Accordingly, IPCO respectfully requests that the Court reject Schneider's proposal and construe this term to mean "a radio modem and its equivalents."

**D.**  *"[a server comprising] means for transmitting said data packet with a header to a client of said wireless network"* (**'516 Patent Claims 6, 8, and 9**)

| Plaintiff's Position | Schneider's Position |
|---|---|
| Function: transmitting said data packet with said header to a client of said wireless network | Function: transmitting a data packet with a header to a client of a wireless network |
| Structure: a radio modem and its equivalents | Structure: The radio modem 62 described in FIGS. 3 and 12, col. 13, ll. 10-17, and col. 18, l. 14 to col. 19, l. 7 of the specification. |

For the same reasons set forth above in Part VI.C with respect to "means for receiving…," IPCO respectfully requests that the Court adopt IPCO's proposed construction.

**VII.   Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that this Court construe the disputed claim terms in accordance with Plaintiff's proposed constructions set forth above.

Respectfully submitted this 11th day of January, 2013.

ROBBINS GELLER RUDMAN & DOWD LLP


*/s/ Jessica M. Kattula*

JESSICA M. KATTULA

JOHN C. HERMAN
RYAN K. WALSH
JESSICA M. KATTULA
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
(404) 504-6500 (telephone)
(404) 504-6501 (fax)
jherman@rgrdlaw.com
rwalsh@rgrdlaw.com
jkattula@rgrdlaw.com

WARD & SMITH LAW FIRM
T. JOHN WARD, JR. (State Bar No. 00794818)
P.O. Box 1231
Longview, TX  75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (fax)
jw@jwfirm.com


Attorneys for Plaintiff
IP CO, LLC d/b/a Intus IQ

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 11th day of January, 2013.

*/s/ Jessica M. Kattula*
JESSICA M. KATTULA